UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA
1:15-cv-00159-TDS-JLW

| | | |
|---|---|---|
| JEFFREY RANDLEMAN,<br><br>Plaintiff,<br><br>v.<br><br>ALAMANCE COUNTY SHERIFF TERRY S. JOHNSON, in his individual and official Capacities and JOHN DOE CORPORATION, in its capacity as Surety on the Official Bond of the Sheriff of Alamance County,<br><br>Defendants. | ) | **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JOHNSON'S MOTION TO DISMISS** |

## PREAMBLE

**COME NOW** Defendant**--**Terry S. Johnson, in his official and individual capacities ("Sheriff Johnson")—and submits this Reply to Plaintiff's Response (D.E. #11) opposing Defendant's Motion (D.E. #9) to dismiss the Complaint under Fed. R. Civ. P. 12(b)(6).

## LAW AND ARGUMENT

### A. Plaintiff Has Not Sufficiently Alleged a First Amendment Right

In his Response, Plaintiff confirms his Federal law claims against the Sheriff are grounded solely and exclusively upon the First Amendment and Plaintiff hinges his theory on the decision in *Lane v. Franks*, -- U.S. --, 134 S.Ct. 2639, 189 L.Ed.2d 312 (201. (*See* D.E. #11, pp. 6-9). In doing so, Plaintiff ignores equally important, and significantly more apposite, Supreme Court and Fourth Circuit precedent which dealt squarely with the

application of the First Amendment to the particular employment relationship between a Sheriff and his Deputies.

Specifically, in Elrod v. Burns, 427 U.S. 347, 373, 96 S.Ct. 2673, 2689, 49 L.Ed.2d 547 (1976), the High Court declared that *"patronage dismissals"* violated the First Amendment. The Court went on to reason, however, *". . . our inquiry is not at an end, for the prohibition on encroachment of First Amendment protections is not an absolute. Restraints are permitted for appropriate reasons."* Id. at 360, 96 S.Ct. at 2683. After significant thought and discussion, the Court carved out an exception, permitting patronage dismissals for subordinates holding *"policymaking positions"*. Id. at 367, 96 S.Ct. at 2687.

In Branti v. Finkel, 445 U.S. 507, 518, 100 S.Ct. 1287, 1295, 63 L.Ed.2d 574 (1979), the Supreme Court considered another patronage dismissal suit and further clarified the analysis announced in Elrod as follows: *"In sum, the ultimate inquiry is not whether the label 'policymaker' or 'confidential' fits a particular position; rather, the question is whether the hiring authority can demonstrate that party affiliation is an appropriate requirement for the effective performance of the public office involved."*

In Jenkins v. Medford, 119 F.3d 1156 (4th Cir. 1997), *cert. denied*, 522 U.S. 1090, 118 S.Ct. 881, 139 L.Ed.2d 869 (1998), the Fourth Circuit considered a patronage dismissal suit brought by Deputy Sheriffs here in North Carolina. Specifically, pursuant to 42 U.S.C. § 1983 and under the First and Fourteenth Amendments, the Deputies sued

the Sheriff of Buncombe County for firing them for supporting the Sheriff's opponent during the preceding election. 119 F.3d. at 1158.[1]

The *Jenkins* Court analyzed the Deputies' claims under *Elrod* and *Branti*, *supra*, and in doing so, examined the precise nature of the Deputy Sheriff's position here in North Carolina. 119 F.3d at 1160-64. The Court concluded that "[t]*his examination of the role of deputy sheriffs leads us to conclude that in North Carolina, the office of deputy sheriff is that of a policymaker, and that deputy sheriffs are the alter ego of the sheriff generally, for whose conduct he is liable. We therefore hold that such North Carolina deputy sheriffs may be lawfully terminated for political reasons under the Elrod–Branti exception to prohibited political terminations.*" *Id*. at 1164. Based on this reasoning, the Fourth Circuit in *Jenkins* reversed the District Court's ruling in favor of Plaintiff and remanded the case with instructions to grant the Defendant Sheriff's Motion to Dismiss. *Id*. at 1165.

In reaching its decision, the *Jenkins* Court relied on pronouncements by the North Carolina General Assembly which expressly recognized that Deputy Sheriff's *"hold an office of special trust and confidence"*, 119 F.3d at 1163 (quoting N.C. Gen. Stat. §17E-1), and quoted with approval its prior opinion in *Joyner v. Lancaster*, 815 F.2d 20, 24 (4th Cir. 1984) (holding that "*mutual confidence and loyalty are of great importance*" in the relationship between a Sheriff and his Deputies). *Jenkins*, 119 F.3d at 1161-62. [2] In sum,

[1] *Jenkins* also involved a Sheriff's Motion to Dismiss under Rule 12(b)(6). *Id*. at 1165.

[2] Ironically, in his Response (D.E. #11, p. 12), Plaintiff openly mocked Defendant's reference to this *"special trust and confidence"* element in the relationship between a Sheriff and his Deputies. In fact, Plaintiff contended that ***"[Defendant's] argument approaches the bizarre."*** *Id*. In reply, Sheriff Johnson politely submits that the Fourth

Jenkins v. Medford establishes that Deputy Sheriffs in North Carolina are policy-making positions for purposes of the First Amendment analysis in alleged wrongful discharge suits.

Plaintiff may argue that *Jenkins* is distinguishable in that it involved a dismissal of Deputies for supporting the Sheriff's electoral opponent while the matter *sub judice* involves the refusal to reappoint the Plaintiff for testifying in Court in an unfavorable manner. In reply, Sheriff Johnson submits that *Jenkins* and the instant case are similar in that both involve applying the First Amendment to employment claims brought by Deputy Sheriffs in North Carolina. Putting aside for the moment the debate as to the actual legal and factual significance of Plaintiff's Court testimony against the Sheriff, Plaintiff is hard-pressed to argue that the right at stake in *Jenkins* (i.e., exercising freedom of political choice in an election) is any less meaningful than the public interest in providing testimony about purported racial discrimination in a law enforcement agency.[3] Both are weighty and important First Amendment interests. As such, there is no logical basis for deviating from

---

Circuit did not find this point to be ***"bizarre"*** but, instead, significant to its reasoning in both *Joyner* and *Jenkins*, *supra*.

[3] Defendant's Motion to Dismiss is made under Rule 12(b)(6). As such, the Court and Counsel are required to address the allegations in the Complaint as scripted by Plaintiff. That said, Sheriff Johnson has steadfastly denied that he engaged in any acts of racial discrimination or that Plaintiff was fired for his testimony about such purported discrimination. Furthermore, since Plaintiff exclusively relies on the First Amendment as the basis of his claims, we should be mindful of the specific nature of his allegations. In his Response, Plaintiff describes the import of his Court testimony against the Sheriff in rather dramatic terms (e.g., as relating to alleged ***"systemic racial discrimination within a law enforcement agency"***—D.E. #11, p. 7). In his Complaint, however, Plaintiff describes his testimony in a far less climactic manner (i.e., that in June 2008--six and ½ years before he filed suit and while serving on a federal immigration task force--he was purportedly asked to check the immigration status of some individuals who had been arrested and some who had not. (*See* Complaint, D.E. #1 at ¶¶19 and 27).

the reasoning and rule applied in *Jenkins*. It is equally clear that if that reasoning and rule are applied in the instant matter, then Plaintiff's claims should be dismissed.

Sheriff Johnson submits that *Jenkins v. Medford* is controlling and notes that numerous other cases have held that public employees are entitled to far less First Amendment protection in the workplace. The following passage from the Fourth Circuit decision in *McVey v. Stacy*, 157 F.3d 271, 278 (4th Cir. 1988) underscores this point:

> **Thus, a public employee, who has a confidential, policymaking, or public contact role and speaks out in a manner that interferes with or undermines the operation of the agency, its mission, or its public confidence, enjoys substantially less First Amendment protection than does a lower level employee. *See, e.g., Bates v. Hunt,* 3 F.3d 374, 378 (11th Cir.1993)(a confidential or policy-making employee, or one whose job requires extensive public contact on employer's behalf, "does not have much protection under the First Amendment when he speaks or acts in a hostile way toward his employer"); *Kinsey v. Salado Indep. Sch. Dist.,* 950 F.2d 988, 996 (5th Cir.1992) (en banc) (because plaintiff's position as school superintendent was "so high-level and confidential," not much evidence was necessary to demonstrate disruption in the workplace); *Gonzalez v. Benavides,* 712 F.2d 142, 148 (5th Cir.1983) (explaining that high-level public executives have little expectation of free speech rights and generally accept employment knowing that speech critical of the employer's policy subjects them to discharge). This principle tends to merge with the established jurisprudence governing the discharge of public employees because of their political beliefs and affiliation. While such beliefs and affiliation are protected by the First Amendment, dismissal may be justified if political party affiliation can be demonstrated to be "an appropriate requirement for the effective performance of the public office involved." *Branti v. Finkel,* 445 U.S. 507, 518, 100 S.Ct. 1287, 63 L.Ed.2d 574 (1980); *see also Elrod v. Burns,* 427 U.S. 347, 372, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976) (plurality opinion) (limiting patronage dismissal to policymaking positions); *Stott v. Haworth,* 916 F.2d 134, 143–44 (4th Cir.1990) (listing cases in which patronage dismissals were justified, such as, *e.g.*, confidential secretary, regional director of a state urban development corporation, city police chief, first deputy commissioner of water department, superintendent of employment for park district, deputy parks commissioner).**

The string of cases cited above by the *McVey* Court demonstrates that public employees with a confidential, policymaking or public contact role are not entitled to expect the same level of First Amendment protection as other public employees. Sheriff Johnson further submits that Deputy Sheriffs are not just public employees with policymaking/public contact roles but political appointees. The reasoning in the cases above permits the outright termination or discharge of public employees. As such, a political appointee like the Plaintiff here would have even less footing under the First Amendment to require reappointment for another term after his existing term expired.

**B. The Sheriff is Entitled to Qualified Immunity**

Because the *Jenkins* Court concluded that the Plaintiffs/Deputies had failed to state a claim upon which relief could be granted, the Court did not consider whether the Sheriff was also entitled to qualified immunity. 119 F.3d at 1165. For the reasons argued in his principal Memorandum, Sheriff Johnson maintains that he is entitled to that immunity, particularly given Plaintiff's status as a political appointee whose existing term as a Deputy had expired and whose claim is for the failure to receive reappointment for another term.

In his Response, however, Plaintiff cites to a number of cases that stand for the proposition that the same First Amendment protections afforded to public employees who have been terminated (i.e., fired), also apply to circumstances involving a failure to rehire. (*See* Plntf's Resp., D.E. #11, pp. 10-11). Using these cases as support, Plaintiff argues that there is no ***"meaningful distinction between 'terminating' an employee and not rehiring an employee . . .'."*** (*Id*. at p. 10).

In reply, Sheriff Johnson submits that Plaintiff has missed the primary point of Defendant's Motion which is that given Plaintiff's particular employment circumstances as a Deputy Sheriff in North Carolina, he has not identified a constitutional right to be reappointed. As such, for the reasons argued in Section A of this Reply, Plaintiff's attempt to rely upon the First Amendment as the source of that alleged right is misplaced.

That said, there is a "meaningful distinction" between a public employee who has been outright terminated (or simply not rehired for exercising a legitimate First Amendment right) and a political appointee (like the Plaintiff here) who was not reappointed to the position he once held but which expired. Not a single one of the "failure to rehire" cases cited by Plaintiff on pages 10-11 of his Response involved a Deputy Sheriff in North Carolina. *See Ridpath v. Bd. Of Governors Marshall Univ.*, 447 F.3d 292, 300 (4th Cir. 2006) (Plaintiff was an Assistant Athletic Director and Adjunct Professor in the "Exercise and Sports Science Department" at Marshall University in West Virginia); *Suarez Corp. Indus. v. McGraw*, 202 F.3d 676, 681-83 (4th Cir. 2000) (Plaintiff was not a public employee but a private corporation and direct mail marketer who sued the State Attorney General of West Virginia); *Daulton v. Affeldt*, 678 F.2d. 487, 488 (4th Cir. 1982) (Plaintiff was a teacher at a community college in North Carolina); *Shumate v. Bd. Of Educ. Of Jackson Cnty.*, 478 F.2d 233, 234 (4th Cir. 1973) (Plaintiff was an art teacher in a public school in West Virginia); *McConnell v. Adams*, 829 F.2d 1319, 1322 (4th Cir. 1987) (Plaintiffs were registrars for local electoral boards in Virginia); *Mounty Healthy City Sch. Dist. v. Doyle*, 429 U.S. 274, 274, 97 S.Ct. 568, 569, 50 L.Ed.2d 471 (1977) (Plaintiff was

an public school teacher in Ohio); and *Perry v. Sinderman*, 408 U.S. 593, 593, 92 S.Ct. 2694, 2695, 33 L.Ed.2d 570 (1972) (Plaintiff was a junior college professor in Texas).

In short, none of the cases cited by Plaintiff in this portion of his Response involved the same type of employment relationship as in the matter now before this Court. *Jenkins v. Medford* remains the case most on point and it supports Sheriff Johnson's Motion to Dismiss the claims against him.

## CONCLUSION

Based upon the foregoing law and arguments, and those contained in Sheriff Johnson's principal Memorandum (D.E. #10), the Sheriff's Motion to Dismiss should be **GRANTED** and the Complaint dismissed **WITH PREJUDICE**.

This the 8th day of June, 2015.

/s/ J. D. Secor III
James D. Secor III (NCSB #17594)
*Attorney for Defendant Johnson*
**FRAZIER HILL & FURY, R.L.L.P.**
Post Office Drawer 1559
Greensboro, NC 27402-1559
Phone: (336) 378-9411 / Fax (336) 274-7358
jsecor@frazierlawnc.com

/s/ Clyde B. Albright
Clyde B. Albright (NCSB #10778)
/s/ Benjamin C. Pierce
Benjamin C. Pierce (NCSB #39987)
*Attorneys for Defendant Johnson*
Alamance County Attorney's Office
124 West Elm Street, Graham, NC 27253
Phone: (336) 570-4046 / Fax: (336) 570-6788
clyde.albright@alamance-nc.com
ben.pierce@alamance-nc.com

## CERTIFICATE OF SERVICE

I hereby certify that on this 8th day of June, 2015, I electronically filed the foregoing **REPLY MEMORANDUM IN SUPPORT OF DEFENDANT JOHNSON'S MOTION TO DISMISS** with the Clerk's Office of the United States District Court, Middle District of North Carolina, using the CM/ECF system, which will send notification of such filing to the following:

Narendra K. Ghosh, Esquire
Paul E. Smith, Esquire
nghosh@pathlaw.com
psmith@pathlaw.com
**PATTERSON HARKAVY, LLP**
*Attorneys for Plaintiff*

This the 8th day of June, 2015.

/s/ J. D. Secor III
James D. Secor III (NCSB #17594)
*Attorney for Defendant Johnson*