IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF NORTH CAROLINA

```
JEFFREY H. RANDLEMAN,             )
                                  )
          Plaintiff,              )
                                  )
     v.                           )      1:15-cv-00159
                                  )
ALAMANCE COUNTY SHERIFF TERRY     )
S. JOHNSON, in his individual     )
and official capacities and       )
JOHN DOE CORPORATION, in its      )
capacity as Surety on the         )
Official Bond of the Sheriff      )
of Alamance County,               )
                                  )
          Defendants.             )
```

### MEMORANDUM OPINION AND ORDER

THOMAS D. SCHROEDER, District Judge.

This is an employment action brought by Plaintiff Jeffrey H. Randleman, a former deputy of the Alamance County Sheriff's Office ("ACSO"). Before the court is the motion to dismiss of Defendant Alamance County Sheriff Terry S. Johnson pursuant to Federal Rule of Civil Procedure 12(b)(6). (Doc. 9.) For the reasons set forth below, the motion will be granted as to Randleman's claim of wrongful discharge in violation of public policy and denied in all other respects.

I.   BACKGROUND

The complaint, construed in the light most favorable to Randleman as the non-moving party, alleges the following:

Randleman was hired by ACSO in 1990 and was employed for twenty-two years. (Doc. 1 at 1, 3.) During his employment, the United States Department of Justice ("DOJ") subpoenaed him to testify in a federal lawsuit alleging that Sheriff Johnson engaged in unlawful racial profiling (id. at 1), and, on August 14, 2014, Randleman testified at trial against Sheriff Johnson, speaking "truthfully and provid[ing] testimony that was damaging" to the sheriff (id. at 1, 7). In November 2014, Sheriff Johnson ran unopposed and was re-elected to a new term as sheriff. (Id. at 9.) Following his re-election, the sheriff "decided not to re-swear Randleman in as a deputy, terminating his employment." (Id.) Randleman alleges that the decision not to re-swear him was based on his "truthful testimony in the DOJ Trial." (Id. at 10.)

Based on the above, Randleman filed the present lawsuit that contains three claims against Sheriff Johnson. Randleman's first claim alleges that the sheriff, in his official and individual capacity, violated Randleman's First Amendment rights under 42 U.S.C. § 1983. (Id. at 10-12.) The second claim alleges that Sheriff Johnson, again in his individual and official capacity, wrongfully discharged Randleman in violation of North Carolina public policy. (Id. at 12-13.) The third claim is against Sheriff Johnson in his official capacity only and alleges violation of Randleman's right to free speech under the North Carolina Constitution. (Id. at 13.)

2

Sheriff Johnson contends that because Randleman was not fired but rather was simply not rehired, Randleman's wrongful discharge claim is doomed and his § 1983 claim must be dismissed because it fails to allege "the existence of a constitutionally-protected property interest in his position." (Doc. 10 at 6.) Sheriff Johnson contends that the third claim under the North Carolina Constitution must be dismissed because Randleman has an adequate remedy under state law. (Id. at 12.) In response, Randleman maintains that he was terminated and contends that First Amendment retaliation claims do not require a "protected property interest." (Doc. 11 at 8.) In his reply brief, Sheriff Johnson argues that Randleman is not entitled to First Amendment protection because he is a "policymaker." (Doc. 12 at 2-6.) Each claim will be addressed below.

**II. ANALYSIS**

    **A.   First Amendment Claim**

Sheriff Johnson argues first that, because Randleman's term ended November 30, 2014, and he was thus not employed when he sought to be re-sworn on December 1, 2014, the deputy's First Amendment claim must be dismissed for failure to allege a property interest. This is incorrect. "[P]ossession of a property right is immaterial to a plaintiff's claim that he was deprived of some valuable benefit as a result of exercising his First Amendment rights." Huang v. Bd. of Governors of Univ. of N.C., 902 F.2d

3

1134, 1140 (4th Cir. 1990); accord Ridpath v. Bd. of Governors Marshall Univ., 447 F.3d 292, 316 n.25 (4th Cir. 2006). Accordingly, Sheriff Johnson's "fired-versus-rehired" distinction is immaterial in the First Amendment context. See Mount Healthy City Sch. Dist. v. Doyle, 429 U.S. 274, 283-84 (1977) (stating that the plaintiff could "establish a claim to reinstatement if the decision not to rehire him was made by reason of his exercise of constitutionally protected First Amendment freedoms"); Perry v. Sindermann, 408 U.S. 593, 597-98 (1972).

Sheriff Johnson next argues that dismissal is required because Randleman has not alleged that he has the "special trust and confidence" of the sheriff, which is a statutory requirement of the oath of office as a deputy sheriff. (Doc. 10 at 9 (citing N.C. Gen. Stat. § 17E-2[1]).) Although the "special trust and confidence" bestowed upon deputy sheriffs is in part why they are considered to be policymakers in North Carolina, see Jenkins v.

---

[1] N.C. Gen. Stat. § 17E-2(3)a. defines a "justice officer" as follows:

> A person who, through the special trust and confidence of the sheriff, has taken the oath of office prescribed by Chapter 11 of the General Statutes as a peace officer in the office of the sheriff. This term includes "deputy sheriffs", "reserve deputy sheriffs", and "special deputy sheriffs", but does not include clerical and support personnel not required to take an oath. The term "special deputy" means a person who, through appointment by the sheriff, becomes an unpaid criminal justice officer to perform a specific act directed by the sheriff.

Id.

4

Medford, 119 F.3d 1156, 1163-64 (4th Cir. 1997) (citing N.C. Gen. Stat. § 17E-1), Sheriff Johnson has articulated his argument as a necessary qualification rather than as a limit on First Amendment protection (Doc. 10 at 8 ("Plaintiff does not allege the necessary qualification for the administration of the oath of office as Deputy Sheriff.")). But Randleman need not allege such a qualification to establish a First Amendment claim, which requires a demonstration that the speech was constitutionally protected and a "motivating" or "but for" cause of the employment decision. Jurgensen v. Fairfax Cty., 745 F.2d 868, 877-878 (4th Cir. 1984). Randleman alleges that his testimony was constitutionally protected and, but for his testimony, Sheriff Johnson would not have refused to re-swear him. (Doc. 1 at 10 ("Defendant Johnson would not have terminated Randleman if Randleman had committed perjury and given testimony more favorable to defendant Johnson.").) These allegations are sufficient to render his claim plausible at this preliminary stage.[2]

---

[2] In any event, Randleman has alleged sufficient facts to make plausible the conclusion that he was meeting the expectations of his job: his lengthy service, consistent positive performance evaluations, lack of any legitimate reason to terminate his employment, absence of any explanation for his not being re-sworn, ACSO's re-swearing of all 120 other deputies, and the chief deputy's statement he was not aware of any problem with Randleman's performance. (Doc. 1 ¶¶ 48-57.) Sheriff Johnson is free to raise as a defense any legitimate, non-protected reason he may claim for not re-swearing Randleman as a deputy. See Mount Healthy City Sch. Bd. of Educ., 429 U.S. at 287 (stating that after a plaintiff establishes that constitutionally protected speech was a "motivating" or "but for" cause of the employment decision, the employer

5

Relying on the fired-versus-rehired distinction, the sheriff asserts finally that, even if Randleman states a First Amendment claim, it is barred by qualified immunity. (Doc. 10 at 13-14.) Specifically, Sherriff Johnson contends that, while it may have been clearly established that he could not fire a current employee for engaging in constitutionally protected speech, it was not clearly established that he was legally obligated to rehire an employee for exercising constitutionally protected speech. (Id.) But in Mount Healthy City School District Board of Education, 429 U.S. 274, the Supreme Court clearly established that a public employer will violate the First Amendment by "deci[ding] not to rehire [an individual] . . . by reason of his exercise of constitutionally protected First Amendment freedoms." Id. at 283-84. The Fourth Circuit has reiterated this rule. See, e.g., Ridpath, 447 F.3d at 316. Accordingly, Sheriff Johnson is not entitled to qualified immunity on the basis of that argument.

Finally, Sheriff Johnson argues that he enjoys broad protection in the hiring and firing of deputies, generally and on qualified immunity grounds, because they are policymakers, citing Elrod v. Burns, 427 U.S. 347, 373 (1976), Branti v. Finkel, 445 U.S. 507, 518 (1979), and Jenkins. (Doc. 12 at 1-3.) Because the

---

is entitled to "show[] by the preponderance of the evidence that it would have reached the same decision as to [the plaintiff's] reemployment even in the absence of the protected conduct").

sheriff raised this argument for the first time in his reply brief and it was not an issue raised by Randleman in his responsive brief, it will not be considered at this time. See, e.g., A Helping Hand, LLC v. Baltimore Cty., 515 F.3d 356, 369 (4th Cir. 2008).[3]

   B.   **State-Law Wrongful Discharge Claim**

Although Sheriff Johnson's fired-versus-rehired distinction does not require dismissal of Randleman's First Amendment claim, the distinction is material for Randleman's state-law claim for wrongful discharge in violation of public policy. In North Carolina, deputy sheriffs are at-will employees. See, e.g., Jenkins, 119 F.3d at 1164 (citing N.C. Gen. Stat. § 153A-103(2)). Randleman does not allege otherwise. Nevertheless, the North Carolina Constitution provides that sheriffs are to be elected to four year terms, N.C. Const. art. VII, § 2, and by statute deputy sheriffs, "act[] in the name of and with powers coterminous with his principal, the elected sheriff," N.C. Gen. Stat. § 17E-1 (emphasis added). Because the powers of deputy sheriffs are coterminous with the sheriff, who is limited by term, the term for

---

[3] Randleman's response brief does not mention Jenkins or the significance of being a policymaker for First Amendment purposes. (See Doc. 11.) Further complicating consideration of the issue, Sheriff Johnson fails to address how the line of cases permitting the dismissal of policymakers for certain political reasons, like Elrod, Branti, and Jenkins, extends to non-political acts by policymakers. See Gentry v. Lowndes Cty., 337 F.3d 481, 488-89 (5th Cir. 2003). But see Bardzik v. Cty. of Orange, 635 F.3d 1138, 1150-51 (9th Cir. 2011).

7

deputy sheriffs is likewise limited, and they must be reappointed and re-sworn at the beginning of the sheriff's elected term. See N.C. Const. art. VII, § 2; N.C. Gen. Stat. § 153A-103; id. § 17E-2(3)a. Unless a sheriff's deputy is re-sworn or reappointed, the employment relationship automatically expires at the end of the sheriff's four year term. See N.C. Gen. Stat. § 153A-103 (stating that each sheriff "has the exclusive right to hire, discharge, and supervise the employees of his office" and that appointed deputies "shall serve at the pleasure" of the sheriff); id. § 162-24 ("The sheriff may not delegate to another person the final responsibility for discharging his official duties, but he may appoint a deputy or employ others to assist him in performing his official duties."); id. § 17E-2(3)a.; see also Young v. Bailey, No. 355PA14-2, 2016 WL 363556, at *1, *5 (N.C. Jan. 29, 2016) (describing the sheriff's authority to appoint under N.C. Gen. Stat. § 153A-103 and stating that deputy sheriffs "serve as the alter egos of the sheriff"); Gowens v. Alamance Cty., 216 N.C. 107, 109, 3 S.E. 2d 339, 340 (1939) (stating that "[t]he right of the sheriff to appoint deputies" existed at common law); cf. El Paso Cty. Sheriff's Deputies' Ass'n, Inc. v. Samaniego, 802 S.W.2d 727, 728-29 (Tex. Ct. App. 1990) ("A deputy sheriff's term expires when the sheriff's term expires."); Brady v. Fort Bend Cty., 145 F.3d 691, 697 (5th Cir. 1998) (applying Texas law); Brett v. Jefferson Cty., 925 F. Supp. 786, 793 (S.D. Ga. 1996) (inferring from the "nature

8

of th[e] relationship" between sheriffs and deputy sheriffs and "the unfettered discretion granted to the sheriff" under Georgia law that "the term of office as deputy expires with the term of the deputy's sheriff"), aff'd in part, vacated in part on other grounds, 123 F.3d 1429 (11th Cir. 1997). Accordingly, deputy sheriffs are unique in that they are at-will employees for a term.

The tort of wrongful discharge in violation of public policy is an exception to the general rule that at-will employees can be discharged without reason in North Carolina. See Coman v. Thomas Mfg. Co., 325 N.C. 172, 175, 381 S.E.2d 445, 446 (1989). Due to its origins, "the tort of wrongful discharge arises only in the context of employees at will." Wagoner v. Elkin City Schools' Bd. of Educ., 113 N.C. App. 579, 588, 440 S.E.2d 119, 125 (1994) (citing Coman, 325 N.C. at 175, 381 S.E.2d at 445); Doyle v. Asheville Orthapaedic Assocs., P.A., 148 N.C. App. 173, 174, 557 S.E.2d 577, 577 (2001) (same). It "does not allow recovery under a theory of wrongful failure to rehire or to reinstate an employee." Satterwhite v. Wal-Mart Stores E., L.P., No. 5:11cv363, 2012 WL 255347, at *3 (E.D.N.C. Jan. 26, 2012); see also Burns v. Bd. of Trustees of Robeson Cmty. Coll., No. 7:13cv100, 2013 WL 5309750, at *7 (E.D.N.C. Sept. 19, 2013) (finding plaintiffs had failed to state a wrongful discharge claim where "each plaintiff was employed pursuant to a renewable contract, the contracts were not renewed, and plaintiffs remained on the job until the

9

expiration of their contract"); Googerdy v. N.C. Agr. & Tech. State Univ., 386 F. Supp. 2d 618, 626 (M.D.N.C. 2005) (citing Claggett v. Wake Forest Univ., 126 N.C. App. 602, 611, 486 S.E.2d 443, 448 (1997)); J.W. v. Johnson Cty. Bd. of Educ., No. 5:11-cv-707-D, 2012 WL 4425439, at *15 (E.D.N.C. Sept. 24, 2012) (same).

Randleman has not alleged, nor can he allege, that he was discharged from an employee-at-will relationship. Notwithstanding his use of the word "terminated," the complaint makes clear that his term of employment expired with Sheriff Johnson's term of office on November 30, 2014. (Doc. 1 at 9 ("Following his 2014 reelection, Defendant Johnson decided not to re-swear Randleman in as a deputy, terminating his employment.")); see N.C. Gen. Stat. § 163-1 (providing that a sheriff's new term is to begin from the first Monday in December after an election); (see also Doc. 10 at 6-7.) Consequently, when Randleman was notified on December 1, 2014, that he would not be reappointed, there was no at-will employment relationship from which to be discharged. (See Doc. 1 at 9.) Thus, because the tort of wrongful discharge in violation of public policy does not contemplate failures to rehire or reappoint, Satterwhite, 2012 WL 255347, at *3, Randleman has failed to state a claim for wrongful discharge in violation of North Carolina public policy, and this claim will be dismissed. See Burns, 2013 WL 5309750, at *7.

10

Case 1:15-cv-00159-TDS-JLW   Document 17   Filed 02/17/16   Page 10 of 15

## C. State Constitutional Claim

Randleman's third claim alleges that Sheriff Johnson's failure to re-swear him violated his free speech rights under Article I, § 14 of the North Carolina Constitution, which provides:

> Freedom of speech and of the press are two of the great bulwarks of liberty and therefore shall never be restrained, but every person shall be held responsible for their abuse.

The North Carolina Supreme Court has held that Article I of the North Carolina Constitution provides a direct cause of action to enforce the rights contained therein where there is an "absence of an adequate state remedy." Corum v. Univ. of N.C., 330 N.C. 761, 782, 413 S.E.2d 276, 289 (1992) (holding that sovereign immunity could not bar a state constitutional claim for violation of free speech rights where no other adequate remedy at law existed); see Petroleum Traders Corp. v. State, 190 N.C. App. 542, 547-48, 660 S.E.2d 662, 665 (2008) ("Corum articulated a waiver of sovereign immunity specifically for claims arising under the Declaration of Rights" (i.e., Article I of the North Carolina Constitution)). Thus, "[t]o assert a direct constitutional claim . . . a plaintiff must allege that no adequate state remedy exists to provide relief for the injury." Copper ex. rel. Copper v. Denlinger, 363 N.C. 784, 788, 688 S.E.2d 426, 428 (2010). The North Carolina Supreme Court has cautioned that in making its assessment, a court "must bow to established claims and remedies where these provide an

11

alternative to the extraordinary exercise of its inherent constitutional power." Corum, 330 N.C. at 784, 413 S.E.2d at 291.

An adequate state law remedy will exist where there is a cause of action — existing at common law or created by statute — that provides plaintiff with "the possibility of relief" for the same injury alleged in the direct constitutional claim. Craig ex rel. Craig v. New Hanover Cty. Bd. of Educ. 363 N.C. 334, 340, 678 S.E.2d 351, 355 (2009); see, e.g., Estate of Fennell ex rel. Fennell v. Stephenson, 137 N.C. App. 430, 437, 528 S.E.2d 911, 915-16 (2000) ("An adequate state remedy exists if, assuming the plaintiff's claim is successful, the remedy would compensate the plaintiff for the same injury alleged in the direct constitutional claim."), rev'd in part on other grounds, 354 N.C. 327, 554 S.E.2d 629 (2001). A remedy is not inadequate simply because the plaintiff "may not be able to meet his factual proof" or because the "burden of proof on his available claim may be different." Edwards v. City of Concord, 827 F. Supp. 2d 517, 522-23 (M.D.N.C. 2011) (citing Rousselo v. Starling, 128 N.C. App. 439, 448-49, 495 S.E.2d 725, 731-32 (1998) (finding common law remedy was not inadequate "merely because [it] might require more" of the plaintiff to prove the officer (in his individual capacity) acted with malice, corruption, or beyond the scope of his duty) and Estate of Fennell, 137 N.C. App at 437, 528 S.E.2d at 915-16). Craig established that Corum never guaranteed a recovery; rather,

12

it guarantees an opportunity to seek redress for the constitutional wrong.  See Craig, 363 N.C. at 340, 678 S.E.2d at 355-56.  Indeed, in finding the existence of a constitutional remedy, the North Carolina Supreme Court specifically distinguished situations where a plaintiff could not establish his common law remedy because of the expiration of a statute of limitations.  Id.; Wilkins v. Good, No. Civ. 4:98CV233, 1999 WL 33320960, at *8 (W.D.N.C. Jul. 29, 1999) (dismissing state constitutional claim where plaintiffs failed to comply with the statute of limitations for their state law claim).

Sheriff Johnson argues that because Randleman pleaded a wrongful discharge claim and a waiver of governmental immunity by the purchase of a bond,[4] the deputy has an adequate remedy under state law because he has "at least the opportunity to enter the courthouse doors and present his claim and the possibility of

---

[4] Unless waived through the purchase of liability insurance, governmental immunity bars state law actions against public officials, such as sheriffs, in their official capacity.  Phillips v. Gray, 163 N.C. App. 52, 55-56, 592 S.E.2d 229, 232 (2004).  A state law remedy cannot be adequate where governmental immunity stands as an absolute bar.  Craig, 363 N.C. at 340, 678 S.E.2d at 355.  In addition, despite the fact that public officials are shielded from liability in their official capacities, "they remain personally liable for any actions which may have been corrupt, malicious or perpetrated outside and beyond the scope of official duties."  Beck v. City of Durham, 154 N.C. App. 221, 230, 573 S.E.2d 183, 190 (2002) (quoting Locus v. Fayetteville State Univ., 102 N.C. App. 522, 526, 402 S.E.2d 862, 865 (1991)).  Here, Randleman alleges that Sheriff Johnson acted "maliciously, willfully, or wantonly, or in a manner that demonstrates a reckless disregard for plaintiff's rights."  (Doc. ¶ 81.)

relief under the circumstances." (Doc. 10 at 12 (citing Wilkerson v. Duke Univ., 229 N.C. App. 670, 676 748 S.E.2d 154, 159 (2013)[5].) Beyond this conclusory contention, however, the sheriff fails to explain how Randleman's wrongful discharge claim provides "the possibility of relief" where, as the sheriff contends and the court has found, Randleman is excluded from the claim's scope because he was never discharged from employment. Sheriff Johnson's briefing urging dismissal of this claim is simply lacking. It addresses none of the critical cases and fails to articulate the contours of North Carolina case law that would be informative on the question of whether Randleman's unviable wrongful discharge claim nevertheless provides the "possibility of relief" under North Carolina law. In the absence of such explanation, and because there is no reason to believe that the presence of the state constitutional claim will require any additional discovery outside that of the federal constitutional claim, Sheriff Johnson's motion to dismiss the claim will be denied at this stage.

---

[5] Sheriff Johnson does not offer an analysis of Wilkerson beyond quoting its quotation of Craig. (Doc. 10 at 12.) But Wilkerson does not illustrate the limits of Craig's "possibility of relief" standard, as two of the plaintiff's state law claims survived summary judgment in that case. 229 N.C. App. at 674-75, 748 S.E.2d at 158-59. The state law claim on which the defendant was granted summary judgment failed because of plaintiff's inability to forecast sufficient evidence. Id. at 675-76, 748 S.E.2d at 159. It is well-established that a plaintiff is not without an adequate remedy merely because he cannot prove his case. See, e.g., Edwards, 827 F. Supp. 2d at 522-23.

14

**III. CONCLUSION**

For the reasons stated,

IT IS THEREFORE ORDERED that Sheriff Johnson's motion to dismiss (Doc. 9) is GRANTED as to Randleman's wrongful discharge claim (Second Cause of Action) and DENIED as to all other claims.

/s/   Thomas D. Schroeder
United States District Judge

February 17, 2016